We're now to 0573259, Sohar Jamal Toma v. Mukasey, and Mr. Nelson. We'll hear you again. Last time, Your Honors. That's okay. We've appreciated these cases. In this case, Your Honor, the judge said that if the petitioner were believed, he would be compelled to conclude that he had suffered past persecution. So the judge's reasoning for disbelief in the petitioner must be examined. And we think that the judge's conclusions are incorrect. He denied the petitioner asylum in part because my client said his father supported the Kurdish Democratic Party, and then he later testified that his father supported the Kurdish people. I don't think that distinction is significant enough in order to deny credibility. You said, you just said you don't think that distinction is significant, but prior facts said it was. And on what basis do we reject that and accept your version of its significance? This Court has been clear that when it finds a minor inconsistency, and we believe this is a minor inconsistency, that inconsistency cannot be upheld by substantial evidence. And remember that the petitioner was a mere seven years old when his father was killed by the government for supporting Kurds. We also disagree with the judge strongly that the petitioner should have known more about the Kurdish people, that he should have known about their various political groups. That is not a standard that is required by the law. And but nevertheless, the judge decided that that was the reason to find the petitioner not credible. Well, the second one that he cited was that his testimony regarding whether he would be beaten with a stick and not bleed didn't seem credible. Wasn't that his second reason? Oh, in order, Your Honor? Yeah. Well, I honestly believe that that's really... Pure speculation. Pure speculation. Exactly. It hardly needs to be addressed. I mean, we could write 80-, 90-page briefs, but I don't know whether you would like to read them. But and I think my example in the brief is clear. We can support Latino people, but that doesn't mean we have to know every organization in the Latino community, or their names, or what their acronyms stand for. And so I think that the judge is wrong on that count, and I think that... Well, again, but it seemed to me, as I have a note here, that the administrative judge said, when this inconsistency between the Kurdish people and the Kurdish Democratic Party was pointed out to him, what the administrative judge said was he did not give an adequate justification and explanation of this. And you say you think his explanation was adequate. Well, what do... Is that what... Do we decide, as a reviewing court, whether this explanation was or was not an adequate explanation of his inconsistency? Yes, this court does. In fact, the words in other credibility cases are plausibility, whether the explanation was plausible. The petitioner did give a plausible explanation as to the inconsistency. He was able to explain it, simply that he thought Kurdish Democratic Party, Kurdish people... Well, he gave an explanation. Yes. But the administrative judge, the immigration judge said it wasn't convincing. I mean, you can always explain seeming inconsistencies, but the question is, is it a convincing explanation? And it is our opinion that substantial evidence shows it was a convincing explanation. But it's interesting because that issue sort of diverts the case down a road that we really don't have to travel, and the immigration judge did not have to go through because the judge was asking whether the respondent's or the petitioner's father supported the Kurds or the Kurdish Democratic Party. But we have in the record credible testimony that the petitioner himself was suspected by the Ba'ath government of collaborating with the Kurds and that they specifically went after him because of his father's history and because of his refusal to join the Ba'ath Party. And so setting that issue aside, which I don't think we need to because I did address it, but if we look at the petitioner himself, he suffered severe past persecution and he testified to it in a credible manner. And these reasons that the judge gives for disbelieving him simply aren't supported by substantial evidence. And that's why, and the judge even acknowledged by themselves, these inconsistencies are insufficient. But when he combined them, he thought that they were, and I think together they are not sufficient to deny him on credibility grounds. Our position is that each of the reasons the judge offered for not believing the respondent are not supported by the evidence and then clearly we lead to the judge's conclusion that my client did suffer past persecution. You would think that the judge at that point would want to grant asylum, but he said, no, there's been changed country conditions. And so we've argued in our brief that the judge's conclusion there was premature. I mean, this was shortly after the war had begun. And although not in the record, the country condition reports from the State Department show that it wasn't until many months later after the war that these militias were formed to go out and harm Christians. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court, John Nicholas for the Government. Your Honors, in this immigration case, the Board correctly determined that the petitioner is not entitled to asylum because substantial evidence supports the immigration judge's finding that the petitioner is not credible, first off. Second, changed country conditions, if this Court gets to that level, support a well-founded fear of persecution. And finally, there is no basis for humanitarian asylum in this matter. In this case, as the Court has noted, there was an adverse credibility finding. This finding was based both on minor and major discrepancies in the petitioner's testimony. What do you consider to be major? The major discrepancies, as noted by the immigration judge, were both the petitioner's failure to state the party that his father was supporting, the Kurdish party, and also the reasons why he was imprisoned. Now, the father could have supported the Kurdish people and could have supported the party, or the petitioner could have thought that those were interchangeable terms, but he clearly could have supported both. There's no doubt that his father was killed because he was supporting the Kurds one way or another. The record does say he was killed for supporting the Kurds. But there are differences there. Why is that major, anyway? First off, he says one thing in his asylum application, and then in his testimony, he backs away from that. In his asylum application, he says that his father supported the Kurdish Democratic Party. In his testimony, he backs away from saying what party his father supported. So that is a major inconsistency. Counselor, as long as we're talking about his asylum application, I thought it was of some interest that when he applied for asylum before the asylum judge, or the asylum officer, the asylum officers put in his asylum notice, You are an arriving alien. Checked it. And this notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.  In other words, the asylum officer that saw this guy the first time, who interviewed him, who went through everything, and did everything that he was supposed to do, wrote right in the application that he found the respondent to have demonstrated a credible fear of persecution or torture. And then, based on whether he could put his father in the right place or not, whether he could say exactly what happened as to whether he was beaten to blood or not, he was therefore incredible. Now tell me that I'm supposed to say that that's sufficient evidence. He's got right in his record that the asylum officer prior to him, and there's case law to suggest he should follow that advice. The asylum officer did not grant asylum. Oh, I understand that. But he found that he had demonstrated a credible fear of persecution or torture. Right. So there's no finding there. So then it goes up to the immigration judge. The immigration judge is able to incorporate the testimony that comes before him into his decision. Well, I understand, but based on what he had in front of him, and the reasons he said we don't have an adverse credibility determination, it seems a little difficult then to suggest that it is substantial evidence. I'm curious, this asylum officer interview, what is that, a short interview in which he just asks a few questions? He says to him, what's the basis for your application, and so on? They're varying lengths. The asylum officer can either... How long normally does the interview with the asylum officer take? I mean, does it take an hour, 15 minutes, 5 minutes? My understanding, it is more in the range of 15 to 20. But I wouldn't want to speculate on that. Let me state it a little differently to you. Is the role of the asylum officer merely to determine whether the alien has presented a prima facie case? No, they can grant asylum. Or what? The asylum officer can grant asylum. The asylum officer can grant asylum. That's correct, Your Honor. In this case, the asylum officer didn't. Now, there are several things that were before the immigration judge found that could be inconsistencies. The one happens to be the blood that you're... whether the beatings brought forth blood. But there are other major ones that are important for this Court to note. The other is why... Well, the IJ found that his testimony and application were inconsistent as to whether his and his father's support was of the Kurdish people or the party. Unable to distinguish. That's a little worrisome to me. Then, the next one is that while in the Iraqi prison, he was beat. But because he was beat with a stick, he should have bled. And because he didn't say he bled, he was inconsistent. And therefore, he shouldn't be credible. This Court does not need to agree with every reason supported by the immigration judge so long as this Court finds that there were substantial reasons. Well, I know, but those don't seem too substantial. If I can explain the Kurdish parties, as this is in the record on page 347. In the mid-1990s, when the petitioner was still in Iraq, there were two parties that were fighting for control in northern Iraq. The Kurdistan Democratic Party and the Patriotic Union of Kurdistan. They were fighting for control. This was an armed conflict. Petitioner's counsel makes the analogy to say that everybody in this country might not know, for example, I believe it was the different Latino subdivisions within the different Latino community. This is a different issue. This is an issue of two parties that are fighting for control in his region. He did not even able to identify them. He did not even know what they were. How old was he then? Seven. He was seven when his father was killed in the 1980s. In the mid-'90s, he was a teenager, perhaps early 20s. But at a point in your life when, if there's an armed conflict going on, to expect him to understand that, that is substantial evidence. It's also substantial evidence that he, in his asylum application, said that he was smuggling weapons. He said he was arrested for smuggling weapons. That's correct. He was arrested for smuggling weapons. But in his testimony, he said he was arrested for smuggling food. Which is very different. That's a major inconsistency. What they said was they suspected him of smuggling weapons, and they arrested him when they found him with food, but they suspected him also of smuggling weapons. Well, there's nothing inconsistent about that. Yes, sir. And they ultimately, he got released. I guess somebody bribed somebody and he got out, probably because they decided they didn't have any proof that he was smuggling weapons. Well, that's perhaps that he was not smuggling weapons. The issue of whether he was smuggling weapons is not the critical issue. Well, I guess what we're really trying to focus you on is, based on what we have in this record, because he went to an asylum officer, and the asylum officer found this requisite in order to get him past persecution, do these inconsistencies raise to the level of substantial evidence for us to suggest that we cannot overturn the credibility determination? That's the big question, because my friend has laid it out very good for you, but we have to deal with the fact that somebody from the government has already made that determination and sent that up to this immigration officer. With his then chance to do something, and this particular individual could have given him asylum, but it must be the government's general approach now, just to make that determination, let somebody else make the last determination, because there are country conditions which apply. And so, therefore, here we are in a situation with an IJ with this being the best he can come up with on credibility, and I'm supposed to sustain that. That's why we're asking the question. Not that we disagree, but we're trying to put it in the most positive light for the petitioner and then have you say something that will help us. Right, Your Honor. The court should not emphasize the findings of the asylum officer. The asylum officer did not grant asylum. Now, it is not the policy of the government for the asylum officers to pass on asylum in this case. There are a good number of people that go through asylum officers and are granted asylum at that level. Can I ask you this? Is it the policy now, because we're very concerned about identity being established, that they do pass it on to the next level? That is not my understanding, Your Honor. I don't know if I'm... You don't know, and I don't know. That is not my understanding. Thank you. I have another question I want to put to you. You may not know the answer to this. Is it customary for the immigration judge to pay much or any heed to what the asylum officer says? Or does the immigration officer say, never mind what the asylum officer said, it's now the burden of the applicant to introduce evidence to support his asylum claim? Often... Is that the way it works? Often... In all four of these cases that we're... Three of these cases, the fourth one, it seems to me I didn't see anything written by the immigration judge which gave any weight at all to the asylum officer's determination. And I think in at least one other of those cases, the asylum officer may have said he could come in. I don't know. I'm not sure of that. Well, in the Hakim case, he made the same determination. These two are similar in that case. I'm not able to answer that question at this time, Your Honor. Thank you. Thank you. I believe our position is clear in this case, unless the court has further questions, and we will submit. Thank you. Case 0573259, Toma v. New Casey, is now submitted. Thank you.
judges: B. Fletcher, Friedman, N.R. Smith